Good morning, Your Honors. May it please the Court. On Bestway's portion of the appeal, we're going to be addressing two issues. First, that the Board incorrectly failed to consider the merits of Ground Two presented in the petition by engaging in a form over substance analysis by focusing on the headings of the petition instead of the language and arguments in the petition and other papers presented before the Board. Secondly, on the merits, the Board erred and ignored, adopted its own unsupported claim and constructions and ignored the undisputed evidence of Bestway's expert, Dr. Sadeh, to arrive at conclusions on motivation to combine that were not supported by substantial evidence, particularly when the references presented interchangeable design choices. So I'd like to focus first on the first issue. The petition clearly set forth alternative challenges to the claims in Ground Two as permitted by law. And this is the Poly Group case, similar to that where the Board, this Court determined that the Board erred in failing to consider alternative arguments explicitly presented in the petition. And here, the petition with respect to Claim 18 makes clear that, quote, Peterson, in view of Fireman, taught every limitation of Claim 18. The petition then goes on to detail how Peterson corresponds to the elements of Claim 18. And after concluding, again, that a combination of Peterson and Fireman teach all the limitations of Claim 18, it presents the alternative argument that if Pat and Owner were to argue that Peterson didn't teach the top and bottom walls as required by the claims, those walls would be obvious in view of a combination. You're saying that's in your petition? That's in the petition, Your Honor. Tell me what page I should look at for that. You start at Appendix Page 159. Right under 2, it says, Peterson, dependent Claim 18, Peterson, in view of Fireman, taught every limitation of Claim 18 for the following reasons. I'm more interested in your alternative. Alternatively, if Peterson doesn't teach the four-wall limitation, we rely on Guand to teach the four-wall limitations. Yep, correct. Or is that? If you look at on page 48, and this is the first full paragraph, to the extent Pat and Owner argues that the top wall and our bottom wall are not taught by Peterson in view of Fireman, those features would have been obvious when combined with the teachings of Guand. And up above, you see where this is the annotated figure presented by the expert. That's where they're showing that Peterson, which is a two-wall structure, corresponds to the four-walls claim limitation. But then it goes on with respect to Guand, after making that alternative argument, then on page 49 of the petition, Record 162, that Guand meets the four-wall limitation because it has top and bottom walls that are opaque, and then it has inner and outer walls that are formed of a transparent material. That's not disputed. There's no record evidence. What did the board say about that? The board said there was no motivation to combine, no discussion of why you would modify Peterson's, you know, allegedly two separate wall construction to have separate material for the top and the bottom, right? That was the board's finding, Your Honor, correct. And that is an error. The substantial evidence doesn't support it. First of all, the... Could we just back up just one second so I understand where we are? Assuming that we accept your argument that these issues were properly raised, the separate combination of Peterson and Farman, and then adding Guand as an alternative to that. Let's assume we agree with you. My understanding is the board still went on and rejected the arguments on the merits, and that's basically what we're talking about now, right? That's correct, Your Honor. The board did alternatively say to the extent that they were presented, and it went on to address the merits and find that the petition did not satisfy the burden required, and that's what we contend and have argued as substantial error and not correct. Okay. So what is it that you understand the board to have said in rejecting the Peterson-Farman combination, that that was only two sheets as opposed to four sheets, and that each wall has to be a separate sheet? The board wasn't really clear in its rationale, Your Honor. What the board said is that we didn't demonstrate that the prior art taught a proper construction of the claims, but that there was no construction offered, nor was there any evidence that the ordinary meaning or BRI of the word wall shouldn't apply. So while it said that we didn't present substantial evidence showing that Peterson met Claim 18, that can only be based on a construction or inherent construction that adopted that said that each wall has to be its own separate sheet of material. And on appeal, you now dispute that construction, right? Well, the first time that the board made that statement, remember, INTEX never presented any evidence. Neither party argued this. Neither party argued how these terms should be construed, right? Yes, Your Honor. And the issue of multiple pieces of material was never raised. Ironically, probably the only time it was raised was in our alternative statement in the petition. But the board did... We do challenge that that's incorrect, if that's the answer to the question, Your Honor. Can you repeat the question, Your Honor? Okay, you do challenge the board's claim construction. Yeah, to the extent that the board has inherently adopted a claim construction, we absolutely challenge it, because certainly, as Dr. Seday said in his expert report and as submitted in the petition, two sheets of material in connection with the tensioning members, when inflated, will form four walls. And notably... Separate from that, I mean, we're not going to be looking at the prior art to interpret the claims. We're going to be looking at the claim language itself, looking at the disclosure and the specification of the patent in suit. So why is it that you think that the board's claim construction is incorrect when it does say, you know, a top wall, a bottom wall, you know, it has, what, a side interior wall, exterior wall, and it talks about them cooperating with one another, which... They cooperate to form the air chamber, but there's nothing in the specification that provides any intent, function, or purpose to the walls. The sole purpose of the walls is to define the boundary of the air chamber. Do you agree that the patent teaches two different embodiments, one in which has four walls and one in which has two? I mean, you might not take that characterization, but there are two different embodiments where there's two walls, where each wall is made of the same material, or there's four walls, each made of different material. The actual detailed description of the patent doesn't make any distinction about how many pieces of material are used to denote how many walls. What the two references that the board cited come from column two, which is the summary, which is just purely a recitation of the claims. So the board is saying because we interpreted the claims, the one that says inner and outer, that that has to be two sheets of material. The subsequent reference that says, I'm sorry, first and second, that's two sheets of material. The subsequent reference that says inner, outer, top, and bottom, that has to be four. So I disagree. I don't think that the patent specification explicitly defines multiple embodiments where the multiple embodiments show walls that have to be formed of multiple pieces of material. Claim one. That may be true in terms of what it explicitly teaches, but it does teach a two-wall embodiment, beginning in column two at line 40. That's what the board cited as being a two-wall embodiment, and it just talks about a first wall and a second wall defining the chamber. I don't think that that necessarily excludes that there can be other walls that define the chamber. But I don't know that it matters whether or not it's a two-wall or four-wall disclosed in the specification, because there's no purpose or function that's defined in the walls. The sole purpose that's added with the... So you have to have a purpose for a different embodiment in order to be able to claim just one embodiment? No, I'm saying there's no functional difference when you get to claim 18, Your Honor. The purpose of adding the two additional walls to define the chamber, at least with respect to the claim, and adding the directional requirement, upper, lower, top and bottom, front and back, is to define where the gaps are specified in claim 18 with respect to the tensioning member. That the gap is between the upper surface of the tensioning member and the upper surface of the wall. Maybe, or maybe it's to say that there's an actual top wall, and there's a bottom wall, and they cooperate with the inner and outer walls. But I think that's, Your Honor, just assume that that's the case. That's inconsistent with the BRI of the term wall, and what I will cite to that is a deposition. In Texas Expert, Mr. Kuchel was asked if he disagreed with Dr. Sade's interpretation and analysis that Peterson itself teaches the four walls, and he didn't dispute it. But, oh, you're saying the opposing counsels, opposing parties. Opposing experts didn't dispute. Not only did they not put on any evidence, when asked during deposition, he had no disagreement with the way Dr. Sade corresponded claim 18. But he said, and I remember that testimony now you're referring to, he specifically said in that testimony, which I read, he said, yeah, I agree. That's how I understand it as he reads it, as the other expert reads it. He did have a qualifier in his admission, did he not? Certainly, Your Honor, but given the opportunity, he didn't challenge it or dispute it. He didn't say, but this is how I think it should be. In Texas provided zero evidence. There's no challenge to claim 18. They haven't said, they haven't put forth any evidence outside of their petition. I understand, but this is a claim construction issue, right? It is a claim construction under BRI, you're right. And I go back to that. Or we go back and we look at the board's claim construction and determine whether it's, whether we review it de novo unless there's fact findings, right? Yes, Your Honor. Okay. Yeah, and when I say there's nothing in this, even under a Phillips standard, if you're going to be excluding the ordinary meaning of the term wall, which isn't certainly limited based on the number of sheets of material that can be employed, there's no disclaimer. There's nothing in the specification or file history that would wean one to believe that a wall has to be formed of a separate sheet of material. And to the exclusion that a single sheet of material couldn't be used to form multiple walls. Before you sit down, spend a moment on a combination that adds guam. Yes, Your Honor. My understanding is you're arguing that the board, again, made a mistake in characterizing what had been raised and that you did raise the design choice argument in the petition. Yes, Your Honor. And what they went on to say that just saying it's a design choice isn't sufficient. What's your answer to that? I think that there are sufficient rationale presented, and there's a separate motivation to combine that talks about the structures of Peterson and Guam being virtually interchangeable because they're inflatable pool structures that have tensioning members. And as the board noted in the prior section with respect to dealing with Claim 1, it was a well-known desire to try to provide pools that were deeper, that had stronger walls. And that same motivation to combine section talked about the benefits provided by Guam of structural stability and beautify its shape. And so the beautifying of the shape comes from the fact that it's got the four walls, the two that are opaque and the two that are translucent, that allow you to see the colored spacing members within it. That would just be an obvious design choice to take the two walls of Peterson and make it such that they were opaque to provide aesthetics. There isn't any function to that. And with respect to the stability component, again, the stability allows for the function to make higher walls as a result of the tensioning members. And so being able to have deeper walls, which is something that the Guam says the multiple pieces allows, including allowing someone to sit on the edge of the pool to be able to watch children that are in it. But you don't have that in your petition, right? That's what Guam says. We have structural stability, and I'm giving an example of what Guam says. Is there anything about this beautifying feature in Guam, does that have anything to do with the four walls? Sure it does. Meaning what I just talked about is when you have the four walls, you have a top and bottom that are opaque. And then you have inner and outer that are connected between the two that are transparent. That's four walls. You have an inner wall connected to an opaque. It's connected to an outer connected to another opaque. That's four walls. It's the use of those four walls with the use of the transparent basically substituted for the two walls that are not transparent in Peterson that allow you to see and have the aesthetics provided by Guam.  Guam, the statements in Guam talk about, it's on page 158 of the petition. Talks about Guam, as with Peterson, Guam does not place any restraint on the materials used for the supporting spacers. And then Guam explains that the circular wall of the present utility model is made of a transparent material and the supporting spacers in the circular wall are of different colors. The overall appearance is refreshing and it is believed consumers desire to purchase can be aroused by the structural stability and beautifying shape, thus it would be obvious to combine. Okay. All right, we'll give you two minutes for rebuttal. Thank you. Okay. Mr. McCoy. Thank you, Your Honor. As this court has explained. Let's just start with that last point. The board said that this petition didn't sufficiently argue Guam. And that part that we've just been looking at seems to be a pretty clear argument that there was a motivation to add Guam and it quotes the parts of Guam that supply the motivation. So, why isn't the board wrong about this? The board isn't wrong for multiple reasons, Your Honor. As the board correctly found, ground two was deficient as written. No, we're not talking about ground two now. We're talking ground two in the terms of combination of Peterson and Farmer. We're talking about first the three references, Peterson, Farmer, and Guam. Yes, Your Honor. And just to be clear, that is in ground two. Claim 18 is in ground two. As the board correctly found in its institution decision, decision denying rehearing, and in the final written decision, as written, this petition was deficient on this issue. Why? The support that is cited for motivation to combine points back to an analysis of just combining Peterson and Fireman. No, because we just read what they said about Guam. If you keep reading, the only support is in the following sentences, That is just talking about combining Peterson and Fireman. What about this language? I think that just to make sure that you're addressing the argument made by your opposing counsel. Yes. Okay, so it says, Guam does not place any restrainer materials used for supporting spacers and instead explains that the circular wall 24 of the present utility model is made of transparent material and the supporting spacers in the circular wall are of different colors, and the overall appearance is refreshing, as it believed consumers' desire to purchase can be aroused by structural stability and beautifying shape. Okay, that's on page 159. And then it says, thus that would have been obvious, right, to combine the teachings of Peterson, Fireman, and Guam. Then later, when they talk about Guam and they say, to the extent patent owner argues the top law and bottom law are not taught by Peterson in view of Fireman, these features would have been obvious when combined with the teachings of Guam. Right? This is on page 161. And it says, see the reason before. So the question is, why isn't the reason on page 158 describing Guam, a motivation to combine or modify Peterson in view of Fireman in view of Guam to have a top law and a bottom law? Why isn't that sufficient? Okay. We submit that the board got it right when they said that it just wasn't clear, first and foremost, that this argument was well-articulated in the petition. Second, we addressed the Cutsforth case, I believe, Your Honor, which says just saying that something is interchangeable is not a motivation to combine it. Well, that's not all they did. What's that? That's not all they did. But just looking at this, what do you say, like in plain speak, what is it that is missing here? Is there, for example, there's nothing here saying the beautifying feature has anything to do with the four walls? Do you have an argument just looking at, you know, the description of Guam on page 158, and then the discussion on page 161 to explain to us just plainly, common sense, why is it that the board interpreted this to not provide a motivation? I think the board, first and foremost, started with the point that this petition did not well-articulate this argument. And that is something the board found repeatedly. And I think that... I know, and we just want to know why. Can you support that? You should be able to support that. Stand up here and tell us why the board got it right. Maybe I'm not understanding your question, Your Honor. Can you try it one more time? Okay. I just want to know why do you think that, why do you think, not why does the board think, why did the board get it right when it said that there was no clear motivation provided in the petition for why one would use, modify Peterson and Fireman in view of Guam to have a top and bottom wall? Because the board found that this is just conclusory testimony. Just saying that something is interchangeable under the Cuts Fourth Case, as we argued in our opposition brief at page 68, does not provide an adequate motivation. So then everything that you're left with is this reference back to Peterson plus Fireman. What about the reference to where they quote Guam on page 158? I think it's three pages prior to the obviousness discussion of the top wall and bottom wall. They have a quote from Guam. Why isn't that quote describing Guam's, you know, the beautifying quote? Why isn't that quote providing motivation? The quote about just trying to have a beautiful appearance? Yes. Structural stability. Well, a two-walled structure, as they argued in Claim One. So that wasn't a problem with Peterson. And then there was no known problem with beautifying appearances in the prior art outside, I guess, of this maybe one paragraph ten of Guam. And so is that your question? Why is that not enough for the board? The argument is that you wouldn't combine Guam because it wasn't necessary, because it was already beautiful and structurally stable? Peterson was perfectly structurally stable. I mean, they relied repeatedly on the strength of these materials that are used to form these types of products to support all of their various arguments. So then to say that exact thing they're arguing isn't stable enough without any other further support just is a conclusionary and unsupported, and that's not the type of argument that carries the day on a motivation you combine. So I have eight and a half minutes left, and I haven't addressed in Texas cross-appeal yet. So if I could, unless you have any other questions. Well, I guess one other thing before I move to this, move away. On the claim construction point, first of all, I think you can look at claim differentiation, Claims One and Claims 18. This is the two sheets? Yes, the two sheets versus the two walls versus four walls, Your Honor. And a lot of criticism was made against us about that issue or on that issue, but we didn't address it in our preliminary response because as we submitted and as the board correctly found, we submit ground two was deficient in many respects. And we were denied an opportunity for a cert reply if Best Way, in fact, raised additional arguments in its supplemental reply. So with that being said, I will switch now to in-Texas cross-appeal. So this boils down to the substantial overlap limitation in Claim One, Your Honors. The ultimate finding that Fireman discloses or suggests at Appendix 21 is the real issue here. We submit there's no evidence that Fireman expressly discloses in Figure 5A that that structure shows the substantial overlap limitation. There's also... What page of the appendix is that on? Appendix 21 was where the board made the finding that Fireman discloses or suggests that it's there. And then when you just go on and continue to look at... Where's the figure? Is that on page 816? Is that the figure? Yes. Yes, it is. And so what you're arguing is that that shows that the top layer doesn't extend all the way over the mesh? The top layer doesn't extend over the mesh and the mesh doesn't extend all the way down. It has to be substantially overlapping at the perimeter. What the board found is that that's just a traditional way of showing a cutaway to establish the underlying structure, right? And they found that based on an argument Bestway made that that's just how you do it. But tellingly... And also because the spec itself says Figure A illustrates a schematic cutaway view, right? It's a cutaway. And so it's being argued that it's a cutout of a middle part of the wall. But there's no other objective evidence to say this is how people understand this. And there's a lot of other evidence, Your Honors, to show why this material would not actually extend all the way to the perimeter throughout the entire wall of firemen. Nor is there any evidence that somebody would cut anything out of firemen or that firemen itself is cut from any other different structure. All these predicate findings are what the board had to rely upon to ultimately reach its conclusions. They didn't just say it's there. They supported it with all this additional extraneous evidence that is not found in the petition. And that is one of the key issues here is that this is all argument that is not in the petition. The first time you ever find anything in the record about this bulk uniform material is an argument Best Way made in their reply brief. Then it's relied upon in the final written decision and relied upon again heavily on this appeal. It's simply not in the petition. There's a lot of argument about... InTex's expert agreed about this material. He agreed that hypothetically if there was a bulk uniform material and if that bulk uniform material, a portion of it was cut and if that cut portion was used in Peterson, yes, the claim would be satisfied. But that is a hypothetical. That's not objective evidence. It's not persuasive and it's certainly not in the petition anywhere. So that's one of the biggest issues here is that this first came up on reply. And as we've shown, it's not expressed, nor is it inherent. We injected the inherency issue just to help substantiate the point that it's not expressly disclosed. There's a lot of different types of three-ply materials known in the art. There's lots of different reasons why you don't want to have the middle layer go all the way to the perimeter. The board even acknowledged this on appendix page 22. But then it just ignored that finding to reach this conclusion that it's suggested environment. So we talked about the Arendi case in our brief and the DSS tech case. To us, that's what this really comes down to, Your Honors, is trying to gap fill a missing limitation with background knowledge in the art. As Arendi explained, that has only happened once and it was the perfect web case. And they said that's the exception, not the rule. And that's a good, strong holding. In perfect web, it was a four-step method, A, B, C, D. No dispute, steps A through C were known and step D was merely repeat A through C until you achieved the claimed purpose. And that's the only case that we're aware of where anybody has actually done this kind of gap-filling analysis. Just to make sure I understand exactly what you're talking about. It's the substantially overlaps the outer perimeter limitation, right? Correct, Your Honor. It has to be at the perimeter. And your view is that given that there's this figure 5A, there should have been something more explicit in the reference to explain that figure 5A is not just, it's not depicting what it actually looks like or given the figure 5A, which is described as a cutaway, nonetheless the reference should have had something saying that that porous sheet 42 extends entirely along the layer 40. Yes, or for example, Fireman also talks about a lot of different ways to manufacture this material and it's undisputed that using those very manufacturing methods, you do not have to, the end result is not necessarily going to have something that goes all the way to the edges and there's reasons for that. And again, all of this comes, the ultimate predicate findings here really stem from the last sentence in paragraph 113 of Dr. Sadek's declaration which is a completely conclusory sentence that cites no evidence whatsoever and we submit that it was just, that kind of was the foundation of this house of cards and we think once that foundation falls, the rest of it falls as well. So before I sit down, I will make one more point going back to your question Guan and Peterson, when they're talking about this four wall construction, there's no tie anywhere in the petition to four wall construction and beautifying appearance. The testimony they rely on for Mr. Kuchel says that it would create a higher pool and that's what something, that's something that a person of skill or excuse me, a buyer would be interested in, not in this translucent beautifying appearance. A higher structure. Alright, I will save the remaining time for rebuttal. Thank you, Your Honor. Just one issue on Guan, Your Honor. They talk about focusing on the petition but consistent with the Chamberlain group we again argued this issue in connection with the reply and addressed many and expounded further on some of the reasons in the petition why it would be obvious and that's on pages 669 and 670 so it's not fair to just focus on the language of the petition as they've tried to do. The one statement I want to start with on Claim 1 is he says it's not undisputed, and I think I got this right not undisputed that the manufacturing methods disclosed in Fireman would have to yield the substantial overlap. But that's not true. There is no evidence that they presented that any known manufacturing method would achieve something other than a laminate that had the substantial overlap. What he's referring to is counsel at the deposition of our expert put a hand-drawn sketch that had mesh slightly removed from the borders of the perimeter and said, could you make this? And he said, sure. And as the board noted, this was a hypothetical manufacturing method. There was no evidence presented by Intex, no evidence presented otherwise by their expert that this was something that was even known. To the contrary, all the evidence supports that the teachings of Fireman did disclose based on the methods that were discussed in there and based on the admissions of Mr. Kuchel, the substantial overlap limitation. Both Dr. Sade testified that multilayer materials in the board found with mesh sandwiched between PVC was well-known and particularly well-known in the inflatable products industry. Intex's expert notably agreed that it was well-known. Similarly, Dr. Sade also testified that with the methods in Fireman, bulk multilayer laminate sheets were well-known. These were bulk sheets that were formed using the roll process that Fireman described in paragraphs 20 to 21 where they were formed in a roll and then the individual components were cut out. Again, and when they were cut out, as their expert, Mr. Kuchel, agreed. When they were cut out, for example, he was asked if you cut a tensioning member from a bulk PVC sheet, would it have substantial overlap? And he agreed. Okay, I think we're out of time. Oh, thank you, Your Honor. Mr. McCoy, you got about a minute. Thank you, Your Honor. So as my opposing counsel was just describing, he was talking about three-ply materials generally. Notably, you never heard him say the word uniform. That's what this all came down to. It has to be uniform for all these different predicate findings to have any weight whatsoever. And there's just no evidence that that's necessary. Your own expert said there's advantages to not welding it all the way to the edge. Your own expert said when talking about the exhibit, applying the very methodology described in Fireman would give you what that looks like if you wanted it to look that way. And he said you can make it however you want it. All of this is in our papers. Again, we go back to the Arundi case. To us, this comes down to trying to gap fill something that is just not expressly disclosed anywhere in Fireman. And just looking at the arguments themselves. If it was so expressly and so clearly disclosed, why go through all this trouble to point to all this additional evidence to try to support the finding? It's just not there. And then you have the problem that all this evidence is completely disclosery and it's not in the petition. It came up for the first time on reply. Okay. Thank you, Mr. McClure. Thank you. Thank both counsel. The case is submitted.